We have three arguments today. The first one is IBT v. Toshiba. Is the Council prepared to go forward? Yes, Your Honor. Ms. Abbey? Yes, Your Honor. And you're going to keep three minutes in reserve. Correct. Well, your clock is set for 12. Thank you, Your Honor. Good morning. The award here must be reversed, at least because the District Court legally erred in excluding the Vitale Declaration in its entirety and clearly erred by failing to consider all the facts that went along with it. Can I ask you this question? I'm not sure you made this argument in the brief. My understanding is that the judge on the Rule 37 issue relied on Rule 37c.1. The language of that seems to me to be, by its terms, limited to failures to provide information under two particular subsections of Rule 26. And tell me if I'm right in thinking nobody has alleged that there was a failure under either 26a or e. It's all about refusal to answer questions under other discovery provisions. That's correct, Your Honor. It's about an alleged refusal to waive the attorney-client privilege during the merit phase of the case, but the attorney-client privilege was waived during the fee phase. I understand. I'm asking, I guess, a very technical question. Rule 37c.1 doesn't seem to apply here at all, regardless of whether the claim of privilege was proper or not. Is that wrong or right? We agree. It does not apply. So why is that argument not made? Because we believe that it doesn't matter whether you proceed under 37 or the privilege, that IBT wins anyway because there was a pre-filing investigation and it wins on the merits. And because there are several other areas in which the judge did not consider the merits of IBT's position. So, Your Honor, because the judge did not consider the pre-filing investigation, the judge held, quote, IBT produced no documents evidencing any infringement investigation. That's at 813. But we know that's not true because IBT produced over 500 pages of pre-filing investigation documents and it answered interrogatory number 3 at 6773. Go ahead, Ms. Addy. Pages 17 and 18 of the red brief, Toshiba says that based on instructions to Mr. Harris not to answer questions based on attorney-client privilege, Mr. Harris even refused to answer questions regarding his own involvement in formulating claim construction and refused to say who authorized the filing of the lawsuit. How is it that Mr. Harris can make a good-faith attorney-client privilege argument based on his own actions? Your Honor, I believe that whether or not that's a good-faith attorney-client privilege argument, which is disputable, is not what's at issue in this case. What's at issue in this case is the pre-filing investigation, which was done by the NIRO firm. Wait, wait, wait. Just let me follow up on that. Sure. So you're not going to answer my question? I'm sorry. Can you repeat the question? Yeah. My question was how can he make that argument in good faith? The argument? Of attorney-client privilege when he's the attorney and the client. In this case, Your Honor, he's not the attorney. He's the inventor. And the attorney is the NIRO firm. So I suppose this sort of flows over into his work at Fish & Richardson when he's an attorney who sues clients of the firm for infringement. In that case, he's the inventor and not the attorney. Is that it? But, Your Honor, I don't see how this relates to the separate case at issue here, IBT versus Toshiba, where he's not the attorney. He's the inventor. And he has assigned all of his rights to IBT. I'm asking you whether you see the relevance or not. I see relevance because in both instances he seems to be saying, well, I'm the inventor, so I'm not the attorney. Is that not correct? He is saying he's the inventor. In both instances, when he's in fact a partner in a law firm. What's the second instance? The second instance is when he's a partner in a law firm and its clients are sued by him for infringement on his patents. Is that not correct? But that's not at issue in this case, Your Honor. I believe you're referring to the… So what you're saying to me is, whether I think it's relevant or not, you don't care to discuss it. No, no, Your Honor. I'm sorry. That's not what I'm saying at all. What I'm saying is that this is a case in which he was the inventor and he had transferred all of his rights over to IBT. It's not a case where he was employed by the Fish & Richardson firm and he was acting as an attorney and he was representing different clients. IBT is what Toshiba describes as a shell corporation. That's correct, Your Honor. That's what Toshiba describes them. But I don't believe it's proper to make a judgment about the type of company. You have to look at the merits of the case. On that particular question about piercing the corporate veil, the district court didn't make any kinds of specific findings. What factual issues, if any, are necessary to have findings about in order to pierce the corporate veil? The district court would need to look at the corporate particulars of IBT and make findings about how IBT maintains its corporate particulars. The district court did not make those findings. The district court did not make findings that IBT failed to maintain a corporate distinction. Toshiba, I think, says, this is now on the personal jurisdiction argument about Mr. Harris, Toshiba says in its red brief, and I don't think you disputed this, that Mr. Harris did not, in the district court, object to personal jurisdiction. Well, I believe that's not entirely accurate. Mr. Harris gave a 30B6 deposition in which he did not object and under the law of 30B6... I'm sorry, I don't mean Mr. Harris in a testimonial capacity. I mean Mr. Harris as represented by a lawyer making legal arguments when he was notified that he would be at risk. And I believe, are you referring to after the decision? At any point, just to, I guess, get to the bottom line, it seems to me your one-page personal jurisdiction argument as to Mr. Harris was waived. Because it wasn't presented to the district court, and you can waive personal jurisdiction. We would disagree because the, we didn't, IBT did not know that the district court was going to exercise jurisdiction over Mr. Harris. And so Mr. Harris didn't have the opportunity to provide personal jurisdiction. During the briefing for the attorney's fees motion, your opposing counsel specifically said that, you know, they wanted attorney's fees from IBT, its attorneys, and its principals. It said that, I think, twice in its opening motion. And then in its reply brief, it went into much greater detail in itemizing why they should also be on the hook in naming Mr. Harris and Mr. Parker. And in your opposition, I didn't see any commentary about any of this. And so I'm also trying to figure out whether both the issues are waived, with respect to piercing the corporate bail with respect to Mr. Parker, and personal jurisdiction with respect to Mr. Harris, given the way that the briefing was, that the district court judge never had an opportunity to consider the arguments you're raising to us now. Well, Your Honor, it's not waived because the district court didn't do the analysis. And he has to do the analysis, and he has to consider the facts. And that is our theme in this case from the beginning. I'm sorry, do you understand my concern? My concern is he doesn't do the analysis if he's not given the arguments that that's an actual issue that he needs to resolve. And that's my concern. I didn't see anything in your briefing below that raised these particular arguments that you're raising now. So now I'm questioning whether it's appropriate as an appellate court to overturn a district court decision based on an argument that was never raised to the district court. I think jurisdiction cannot be waived, and we would disagree that it was waived. But I'd like to bring the discussion back to the award of fees to begin with, because I believe that that's where the legal errors and the clear errors cause an abuse of discretion under the Octane and Highmark standard, which resolves these issues. And just, Ms. Addy, were there some documents that, I guess, the Vitale Declaration tried to use that were never listed on the privilege law? No, Your Honor. Is that a privilege law that's cited? Because it doesn't say privilege law. What are you referring to? Sure. Let me find the page reference for you. 6630 in the joint appendix, list of withheld documents by Innovative Biometric Technology, LLC. I presume that's a privilege law, but it doesn't say privilege law. Yes, Your Honor, that is a privilege law, and if I can explain what happened here. Who prepared it? The NIRO firm, Your Honor. I'm sorry? The NIRO firm, Your Honor. Okay. Many of the documents that were non-privileged were produced before, during the merit phase of the case, as you can see in that interrogatory number three, which cites the documents. And in our opposition to Toshiba's motion to strike, at pages four through five, there's a table that compares the IBT production number and the ASITE number and shows that these documents were previously produced. Now, in the Vitale Declaration, which was produced after the conclusion of the case, in the merit phase of the case, when IBT waived the attorney-client privilege, then those documents and some of the documents that it was previously claiming privilege were produced also to the court and to Toshiba to consider. Let me get this straight, okay, because we did a little looking at this, because I was concerned whether the privilege law was complete. Exhibits to the Vitale Declaration 2, 6, 9, 25, 28, and 29 were not in the privilege law. I presume that's because they're addressed to outside entities. That's correct, Your Honor. They're addressed to outside entities. They would not be privileged. Your time, you're going to be eating into your time. Thank you, Your Honor. It means that the outside entities, including Toshiba, already had these documents concerning the pre-filing investigation. Thank you, Your Honor. Ms. Woodward? Good morning. You've got 15. Would you mind starting by addressing my question about Rule 37C1, which I don't understand why it applies, because as I read your red brief, you don't even once suggest that there was a failure to under 26A or 26B, that is the sua sponte disclosures and supplementing expert reports. It's all about claim of privilege and whatnot in response to deposition questions, interrogatories, other things. How does Rule 37C1 even apply? Sure. I'd be happy to start there. As you suggested, this argument was not provided or presented by IBT, either below or in response to the brief or to this court. So I'll try to do the best that I can. But as far as I understand, part of the problem with what they did in presenting this, all this information during what they call the attorney's fees case, part of the case, is that there were additional people that were involved, for example, in the pre-filing investigation. There were others at the NIRO firm in particular. There was one associate who wrote this kind of key memo that we think is so inconsistent with many of the positions that they take. So there were actually individuals who would have had information that was relevant to the claims at issue in this case that were not presented to us in initial disclosures, for example. Relevant to what aspect of the case? Putting aside my question about 37C1, how, if at all, would any of the withheld information have had a bearing on any issue that was going to be litigated before the resolution of the merits? So it has an impact on both infringement and invalidity. And we see this throughout the materials that they supplied with the Vitale Declaration, that there actually were admissions regarding the scope of the prior art, that there were admissions regarding whether or not it's inherent that you're going to decrypt a piece of information because you encrypt it. And with respect to the individual associate at the NIRO firm that I mentioned before, she provided some interesting information regarding the infringement and whether or not there was a response to the defendant's non-infringement positions in this case. That's absolutely relevant to whether or not the defendants actually are, in fact, infringing. So I do think, and to take that question more broadly in the context of pre-filing investigations, because it's IBT's position that that would never be relevant to anything in the merits phase of a case. If you take, for example, the situation where you have to test, if you've got a compound and you have to test to determine whether or not the accused product or compound has a certain makeup, chemical makeup, you may do testing, and then you're going to claim privilege and withhold that as work product. You're allowed to do that. The rules say that you can withhold it as work product. But the problem is, is that the test results, particularly if they're negative, those absolutely implicate whether or not there actually is infringement. So the pre-filing investigation is tied into the actual merits of the case. And it's one of the reasons that we believe both in this case and more generally that you can't have this dichotomy of a merits phase and then an attorney's fees phase. So I think you said this already, but I'd like you to tell me again. What are the specific components, specific items in the excluded material that you think would be relevant or would have been relevant to the merits litigation here, had it actually been to the merits litigation here? The one example that I said was with respect to the memo that was prepared by the NIRO firm. I think that that had information that would be relevant to the non-infringement analysis in terms of whether or not there is any response to the actual position that the defendants ended up briefing on summary judgment with respect to the limited exception mode. There was also information— I'm sorry. That was way too complicated for me to follow. Okay, so there is a—and I can get you the site— there was a memo prepared by a NIRO associate, and it was trying to walk through the non-infringement position. And in particular, when they got to limited exception mode, she specifically asked the question of what is our response to this. And the memo ends there. She can't identify a response to the very position that the defendants, including Toshiba, ended up briefing as for why they're entitled to summary judgment of non-infringement. And you think that—I guess that seems rather broad, that an attorney's internal discussion that raises questions in preparing a case that have to be answered to figure out how to proceed would actually be relevant evidence to be presented on the infringement issues in a trial? I think that it would, because what we saw is that they had no answer. And if they did, it must be contained in the other documents that they still continued to withhold. That's part of the problem with the Vitale Declaration. It wasn't just that they produced it late. It wasn't just, as Judge Wallach pointed out, that there were documents that weren't found on their privilege log. One of the most egregious errors here is that they continued to withhold other documents. They only cherry-picked the documents that they wanted to provide. I mean, that's exactly the kind of sword and shield— Right, but the district court here did not do any— rely on any ground other than you didn't provide them at the merit stage. You can't provide them now, right? I would disagree. At A-20, in his opinion, he actually makes exactly this sword-shield argument. And he says, having raised privilege objections as a shield to block defendants' access to relevant evidence, IBT cannot now cherry-pick documents. So he was absolutely concerned. And we don't know. I mean, the answer is we don't know the relevance of the rest of those documents because they weren't provided to us. They weren't provided in camera to the district court. And the district court did find that as part of the grounds for striking the declaration. And cherry-picking documents is a grounds for excluding the produced materials, right? That's correct. And the other two pieces of information that I was going to present to you, Judge Toronto, in answer to your question, both relate to Harris's claim charts. Number one, where he was trying to identify where encryption was found in the accused technologies, he actually pointed to prior art, to previous versions of the Toshiba software that actually constitute prior art. So that, again, would have been a piece of information relevant both to infringement and to invalidity and would have been important to the merit stage of the case. And then the final piece of information, again, just in the documents that we have, was Harris's position that by having encryption, you inherently must, that was his word, you must have decryption in order to use it. That ended up being the entire debate in the validity context at summary judgment as to whether or not that was, in fact, something that was inherent in the bio-login materials. Can I change the subject and ask you about the Rule 56 issue? As I understand, remember the district judge's reasoning on that. He said one and only one thing. It must have been a Rule 56 violation because having asked for additional discovery under Rule 56D, when they got the materials, they didn't use them. It seems to me it must be extremely common to say we need to know if something is out there. You get the information. It turns out not to be relevant, and you don't rely on it. What's the wrong in that? In that portion of his opinion, I agree with you that that's all that he cites, too. But in the fact finding, he also points to the fact that when they were given a technical witness, a 30B6 witness to address all the technical issues, including both infringement and invalidity, they didn't ask any of the relevant questions. They didn't ask a single question that tried to get at the point of whether or not there actually was a difference between the accused software and the prior art software. I thought one of the bases for fees here was the finding that it was an improper request under Rule 56D for more information, and the ground for saying that that was improper was that IBT didn't use the information that came back in response to the request. Rule 56 is absolutely one of four independent grounds. If this court finds that any one of those four grounds justify the award of attorney's fees, and in particular, I think most of the discussion here is focused on 285, which I think clearly does provide proper grounds for the attorney fee award, then any one of those can independently justify affirmance. Tell me if this is an incorrect way of thinking about the framework here. It may well be that the district court could have found objective baselessness of the claim construction and exceptional case on that basis. The district court didn't say that it was an independent basis, but even if the district court had, there would still be the question under 285 as well as under 1927 and whatever Rule 41 is doing, should fees be awarded? Fees don't have to be awarded for exceptional cases, and if so, how much? The district court rather heavily relied on his view of the insufficiency of the pre-suit investigation. The reason that at least I started with the Rule 37 matter and the questions about the pre-suit investigation is that while perhaps not determinative, they seem to have been a central part of the overall assessment of whether to award fees and if so, how much, regardless of the particular source, the four possible sources of such fees. So first to respond to that part, I think it's pretty clear, and this is at his opinion on page A9, that he was pointing out that there are four separate grounds here for fees. I'm sorry, the word grounds here is more confusing. There are four separate legal sources of authority. The grounds for imposing fees and deciding how much under each of those sources is this mix of findings about objective baselessness of the claim from day one, the Rule 56D request, and repeatedly the finding that there was no adequate pre-suit investigation. So it seems to me if there's a problem with the finding of no adequate pre-suit investigation because all of the relevant evidence of the investigation was excluded, that seems to me to taint the award of fees regardless of legal source. That's what I want you to address. Sure, and I would respectfully disagree with that presumption. He actually, even within the part where he's addressing the 285 fees, he clearly differentiates that there's within that even two separate independent reasons that fees would be appropriate under 285. First, he goes through the objective baselessness, which we all know now was an even more rigorous standard than was necessary in order to define that the case was exceptional. And he finds that that independently would justify fees. He then goes to litigation misconduct. I'm sorry, what he finds is that that independently would make the case exceptional. Exceptional, correct. But our law says you can say exceptional but zero fees. So then the question is you've got to consider everything in deciding what to do with this exceptional finding. Certainly, but it does justify a grant of fees if he then takes that next step. That's correct. And then the second thing that he goes through is litigation misconduct. And here he's got a litany of reasons. I think that IBT referred to it as 12, which is probably a good way to count it. And there's even more that he didn't include that show that this case was litigated unreasonably. And those have nothing to do at all with the pre-filing investigation. So to get to your point of tainting, I think that his independent grounds for litigation misconduct can, again, justify affirming this without getting into whether or not it was proper to strike the Vitality Declaration. Just to mention a few of those. Just a technical question out of my curiosity. Does Sashiva view that award as joint in several against counsel and clients? I believe that that's the best reading of the opinion, yes. But to get back to the litigation misconduct, the judge specifically found that IBT did not review the discovery they received, that two years into the case they filed the same claim charts that provided defendants before the case was filed. They pursued no evidence of discovery on direct infringers. They were evasive and misrepresented the prior art at summary judgment. They urged several times to have a special master appointed. And then when the judge took that request and did so, they vehemently opposed it. Oh, it was pretty expensive. $30,000 compared to paying for Mr. Nyro's fees is probably not all that expensive. But then there's additional grounds for the litigation misconduct finding. At every opportunity, IBT required unnecessary briefing by Toshiba in this case. They filed suit and named the wrong parties. They wouldn't dismiss them. We had to brief it. They twice urged the court to find that Toshiba was not the prevailing party here, despite very clear precedent from this court on exactly the same grounds that they were. They required unnecessary motion practice to unseal the court's decision on attorney's fees, despite the fact that in several meet and confers they were unable to point to anything that was confidential. So certainly all of this behavior, and particularly when you view that in light of the low merits of this case, we think that that, again, justifies the district court's finding that its case was exceptional. It sums up this. Thank you. And we just, on behalf of Toshiba, respectfully request that the court affirm the judgment. Hello. Thank you. Ms. Addy, you have two minutes, or three. Three minutes, yeah. Thank you, Your Honor. I appreciate it. First of all, addressing the technical error on Rule 37, it's subsumed within the court's legal error in not considering, regardless of whether they consider the Vitale Declaration, not considering the facts that are subsumed within the Vitale Declaration, which show that there was a legitimate prefiling investigation. In fact, NIRO gave Toshiba before. Since your time is quite limited, can I just ask you, can you address the contention, and I don't remember whether it was in the red brief, maybe it was, that some of the material attached to the Vitale Declaration that was excluded would in fact have been relevant to the merits? I guess there was a Harris memo prior to our discussion, there was some NIRO lawyer asking questions, saying, here's a question we need to know the answer to, we don't. All of that is in the exhibit, and when you look at that, it shows that these are attorneys doing their prefiling due diligence. I'm sorry, how would those, she says that those would actually have been relevant in merits litigation, perhaps admissible, perhaps something like that. Is that wrong? Your Honor, I don't believe they would have been. They are relevant only to show that there was a complete and substantive prefiling investigation undertaken. But the merits litigation, we have no ruling on that at all. There's no ruling on claim construction, so we don't know whether the positions that Toshiba takes are valid, or whether the dispute, which results around column five of the fact, and both parties have a different position, makes sense. We don't know who is meritorious. In addition, no ruling on infringement, no ruling on validity. Ms. Addy, let me ask you the same question I asked Ms. Woodward. Does your client view that a ward is joined in several? It's severable, Your Honor. But even as severable, if you look at each of the bases, we find that none of them make sense because he didn't perform the analysis. Severable in what sense? For example. I'm asking is it joined in several against both counsel and their client. Oh, I'm sorry, I thought you meant looking at each of the different bases upon which he awarded. I'm asking is it joined in several. I'm curious about the ethical obligation of an attorney if they have a joined in several obligation awarded against both themselves and their client. I think in the end, the NIRA firm is going to be responsible for this. That answers your question. Thank you. Even if we think that there's some trouble with the exclusion of the vitality of the NIRA declaration, if we conclude that the district court did read your claim construction argument as being meritless, baseless, and therefore it stands apart in terms of its substantive strength with ordinary patent litigation, and in addition, the district court concluded, and we find no abuse of discretion, that IBT litigated this case in an unreasonable manner, then aren't each of those independent grounds for concluding that it was okay to award the 285Cs? Your Honor, respectfully, no, because you have to look at the totality of the circumstances, and when you look at the totality of the circumstances, there was no substantive decision made, no analysis done on any of those factors, and when you look at the litigation misconduct, it is infected with the lack of substantive analysis. And so, no, Your Honor, we would not agree on that. In addition... Can I just add something? Yes, of course. Ms. Woodworth said that there were, I think, a dozen, perhaps more, findings of litigation misconduct, and never mind the merits of those findings, but telling in what way, if at all, the award of fees on the basis of those findings would be tainted, in your view, by the disregard of all of the evidence about the pre-suit investigation. I think if you look at this Court's decision in E.O.N. Net 2 and Medtronic v. Brain Lab, it shows that you have to consider the totality of the circumstances, and even if you were to agree with those findings, which when they are considered in lieu of the fact they're not correct, in the totality of the circumstances, they do not rise to the level of fees. I see that my time has run out. Your Honors... Your time is up. Thank you. This case should be reversed. That was a nice brief summary.